JAMES P. CAREY vs. WILLIAM J. MERCER.

Berkshire.    September 20, 1921. — October 13, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Physicians and Surgeons. Negligence,* Of physician and surgeon.   *X-ray Photograph.   Practice, Civil,* Exceptions.

Where, at the trial of an action against a physician and surgeon for personal injuries alleged to have resulted from negligence of the defendant in treating the plaintiff for a broken leg, there was evidence tending to show that the defendant was negligent in failing to have an X-ray photograph taken of the leg, and the defendant introduced evidence, which was controverted, tending to show that he advised the plaintiff to have the photograph taken, but that the plaintiff declined to have it done, the defendant is entitled to have granted a request for a ruling that, if the jury found that an X-ray photograph was required to determine whether any bone of the plaintiff's leg was broken and that the plaintiff was so informed by the defendant and declined to have such photograph taken, then the defendant was not responsible for not discovering the broken bone.

After the ruling above described was refused, the judge instructed the jury as follows: "Where a manual examination or an ordinary examination is made by a physician called in a case in which a suspicion of fracture may be present, it may be possible to determine the fracture without it, and if the examination discloses no fracture but there are symptoms present which to the ordinary and average physician would, in your opinion, require the further verification by an X-ray machine, and the doctor fails to have such an X-ray taken, or at least to urge its being taken upon his patient, he would be negligent. . . . It is no part of a doctor's duty, who has advised and urged what, in his opinion, and what would, in your opinion, according to the standard of ordinary skill in the community, be necessary for the proper treatment of the case, to insist upon it against objection upon the part of the patient, but you would have to find that the patient fully understood and was informed of the reasonableness of the requirement and refused to follow the doctor's advice with a full knowledge of the consequences he was bringing upon himself, in order to justify the failure of a physician to take an X-ray or to treat the patient in any other manner solely because the patient refused to submit to the treatment or to follow the doctor's advice." *Held,* that the ruling requested was not covered by the instruction given.

The statement in the portion of the judge's charge, above quoted, "You would have to find that the patient refused to have the X-ray taken with the full knowledge on the part of the patient of the danger that was involved," was error.

A physician and surgeon cannot be held liable for the consequences of a failure by a patient to follow his advice, even if such failure was caused by a lack of understanding of the advice on the part of the patient or by ignorance on his

part of the consequences which would result from his refusal to follow the advice given.

An exception to a refusal to grant a request that a certain instruction be given to the jury cannot be sustained, where the record discloses no evidence calling for the instruction and it appears that, so far as the instruction was a correct statement of law, it was given in the charge to the jury.

TORT for personal injuries alleged to have resulted from negligent treatment of the plaintiff by the defendant, a physician and surgeon. Writ dated October 8, 1917.

In the Superior Court, the action was tried before *N. P. Brown*, J. Material evidence, requests and instructions asked for by the defendant and instructions given by the trial judge are described in the opinion. The jury found for the plaintiff in the sum of $3,000; and the defendant alleged exceptions.

The case was submitted on briefs.

*J. F. Noxon, M. L. Eisner & W. F. Hawkins*, for the defendant.

*J. A. Baker & H. C. Joyner*, for the plaintiff.

CARROLL, J. The plaintiff suffered a "fracture of the bone of the upper tibia at the knee joint." The defendant, a physician, was called to attend him and, it is alleged, failed to treat the patient with proper care and skill. The jury found for the plaintiff.

The evidence was conflicting on the question of the defendant's negligence. The plaintiff's evidence tended to show "among other acts of negligence," that the defendant was negligent in failing to have an X-ray photograph of the plaintiff's leg taken, which photograph, it was claimed, would have disclosed a fracture at the knee joint. There was evidence that the defendant advised the plaintiff to have the photograph taken, but that he declined because of the expense connected therewith. The plaintiff offered evidence that no such suggestion or advice was given and that he never declined to have such photograph taken on account of the expense, or for any other reason.

The defendant requested the trial judge to rule, "If the jury find that the X-ray photograph was required to determine whether any bone of the plaintiff's leg was broken, and [he] was so informed by the defendant, and declined to have such photograph taken, then the defendant is not responsible for not discovering the broken bone." This request was refused. The jury were instructed: "Where a manual examination or an ordinary examination is made

by a physician called in a case in which a suspicion of fracture may be present, it may be possible to determine the fracture without it, and if the examination discloses no fracture but there are symptoms present which to the ordinary and average physician would, in your opinion, require the further verification by an X-ray machine, and the doctor fails to have such an X-ray taken or at least to urge its being taken upon his patient, he would be negligent. Now you observe perhaps in that last statement a qualification. Ordinarily those of us who become ill or injured are quite willing to place ourselves entirely at the disposition of the doctor we call and follow their advice carefully. Others possibly at times decline the doctor's advice. It is no part of a doctor's duty, who has advised and urged what, in his opinion, and what would, in your opinion, according to the standard of ordinary skill in the community, be necessary for the proper treatment of the case, to insist upon it against objection upon the part of the patient, but you would have to find that the patient fully understood and was informed of the reasonableness of the requirement and refused to follow the doctor's advice with a full knowledge of the consequences he was bringing upon himself, in order to justify the failure of a physician to take an X-ray, or to treat the patient in any other manner solely because the patient refused to submit to the treatment or to follow the doctor's advice." The defendant excepted to the instruction, "You would have to find that the patient refused to have the X-ray taken with the full knowledge on the part of the patient of the danger that was involved."

The ruling requested should have been given and there was error in the part of the charge, to which the defendant excepted. If the X-ray photograph was not taken because of the plaintiff's refusal, the defendant cannot be charged with negligence in this respect. He was responsible to the plaintiff for the failure to use the care and skill of an ordinary practitioner in the community where he practised his profession. *Tucker* v. *Stetson,* 233 Mass. 81, 84. If such a photograph was essential in order to discover the fracture, and the physician, in the exercise of that degree of care required of him, advised that it be taken and the patient refused this advice, the physician cannot be charged with negligence. The plaintiff cannot hold the defendant responsible for the conse-

quences of his own want of care, nor attribute to him damages resulting from his own neglect; and he cannot complain if the injury resulted from his refusal to follow the advice of the attending physician. The instructions given did not cover this request.

The instruction, "you would have to find that the patient fully understood and was informed of the reasonableness of the requirement and refused to follow the doctor's advice with a full knowledge of the consequences he was bringing upon himself," was not a correct statement of the law. A patient, when he places himself in the care of a physician, cannot decline to follow his advice nor adopt his suggestions because the patient does not possess full knowledge of the dangers involved in his neglect, or in his failure to do what the physician recommends. The patient cannot charge the physician with negligence if the patient himself refuses to carry out the directions because ignorant of the consequences which might result from such failure. The patient may fail to understand fully the necessity of doing what the physician recommends, but he cannot attribute to the physician the damages which resulted from his own failure to have something done, when this was caused by his own conduct, even if he was ignorant of the consequences which would result from his refusal. If the rule were as given in this instruction to the jury it would place an unreasonable burden upon the physician, and would require of him a much higher standard of care than the law requires.

The defendant also asked for this ruling: "If the jury find that the defendant was negligent in not requiring an X-ray photograph to be taken of the plaintiff's leg, still the defendant would not be liable for that neglect, provided the treatment of the leg employed by the defendant was proper for the leg under the circumstances that actually existed." This request was refused. On the evidence disclosed in the bill of exceptions, there is nothing to show what treatment was employed by the defendant, or what the circumstances were that actually existed. The only evidence of neglect disclosed was the failure to have the X-ray taken and there were no facts shown which called for the instruction. In so far as the request was a correct statement of law, it was covered in the charge of the presiding judge. *Morse, Williams & Co.* v. *Ellis,* 172 Mass. 378.

*Exceptions sustained.*