## FORBES S. ADAM v. STANLEY H. OSBORN

HON. ERNEST A. INGLIS, A Judge of the Superior Court FILE No. 12276

Memorandum filed July 12, 1948.

*James W. Carpenter,* of Hartford, *David Cramer,* of Litchfield, and *Sully I. Berman,* of Sharon, for the Plaintiff.

*Harry L. Brooks,* Assistant Attorney General for the Defendant.

INGLIS, J. This is an application for a supersedeas to stay the revocation of the applicant's license as a physician pending an appeal taken from a decision revoking that license made by

the medical board and state department of health. The question whether such a supersedeas should be ordered turns on the question whether the appeal prima facie appears to have enough merit to indicate a reasonable prospect of success. If it does have that degree of merit, the trier's discretion should be so exercised as to keep matters in statu quo pending the appeal by staying the revocation of the applicant's license.

It appears from the finding of the Connecticut medical examining board that the basis for the revocation of the applicant's license was the conclusion reached by the board that the applicant "is guilty of dishonorable and unprofessional conduct and was wantonly negligent in the practice of his profession as a physician and surgeon as it related to the charges 1 (c); 4 (c), (d) and (e) and 5 (e)." (The latter was clearly intended to read 5c instead of 5e.) These charges were in effect that the applicant had performed an unnecessary surgical operation on Mrs. Arthur Gordon, had treated in a ruthless and corrupt and negligent manner said Mrs. Gordon, a Mrs. Everett Brady and her baby, and a James Nally.

In his appeal from the revocation of his license and upon the hearing on this application, the applicant has advanced a considerable number of reasons why, he claims, his appeal should be allowed. At this time it is necessary to consider only two of those reasons.

The first is his claim that the medical examining board reached its conclusion that the applicant's treatment of the four patients named was unprofessional and wantonly negligent without any evidence as to what would constitute unprofessional or negligent conduct under the circumstances. It is clear that the board had before it evidence as to what the treatment was which Dr. Adam had given these patients but it apparently had no evidence that such treatment in any of the cases differed from the standard, accepted procedure in such cases or evinced any less care, skill or judgment than would have been exercised by a reasonably careful physician in general practice in the same locality. Apparently the board relied exclusively upon the knowledge of its own members as to what professional conduct and the exercise of reasonable care would require under the circumstances involved in the treatment of these patients.

In order to make out a case of unprofessional conduct or negligence against a physician it is necessary to prove not only what he did or failed to do in the treatment of his patient but also that the treatment in some particular did not measure up to the standard of care required of him. Such standard is that degree of care, skill and judgment exercised by the reasonably prudent physician in the same general locality in the treatment of the same sort of case. What that standard of care is, is a matter of fact which must be proved by evidence. *Capolupo* v. *Wills,* 116 Conn. 13. Ordinarily, this fact must be proved by expert testimony. *Chubb* v. *Holmes,* 111 Conn. 482. If in this case the board had no evidence before it upon which it could predicate a finding of fact as to what that standard of care required of Dr. Adam in the treatment of any one of his patients, it may well be claimed that it did not have before it sufficient evidence to warrant a finding that he had not satisfied that standard of care, and therefore did not have sufficient evidence to warrant its conclusion that he was guilty of unprofessional conduct and negligence.

It does not meet this difficulty to say that after all, the members of the board were themselves physicians and must have known from their own experience what that standard of care required. Due process of law requires that, when a person is entitled to a hearing, he be faced at that hearing with all of the evidence which the trier is going to take into consideration against him. He is entitled to cross-examine any witness produced against him and he is entitled to meet any evidence produced against him with other evidence contradicting it. These things he is not in a position to do unless the evidence against him is brought out into the open at the time of his hearing. This is a matter of fundamental and natural law. If on his hearing he has not been faced with all of the evidence upon which the trier decides the issues, the hearing has not been conducted in accordance with due process of law. *Reardon* v. *Dental Board,* 128 Conn. 116; *Colonial Beacon Oil Co.* v. *Zoning Board of Appeals,* 128 Conn. 351.

Accordingly, if it should appear on the applicant's appeal from the revocation of his license that the board had reached its conclusion that Dr. Adam's conduct in the treatment of the named patients had been unprofessional and negligent, without having before it at his hearing any evidence as to what the

standard of care was which was required of him in those treatments but having relied exclusively on the general knowledge of the members of the board as to what that standard of care was, it is likely that the court would have to conclude that the board had acted illegally.

The second contention of the applicant to be considered is that the conclusion of the board that the applicant was "wantonly negligent" in his treatment of three or four separate patients over a period of years does not, under the statute, warrant a revocation of his license. It is true that the statute (§ 475f, Sup. 1941) does not make wanton negligence in itself a ground for revocation. The phrase in the statute which comes nearest to it is "habitually negligent conduct in the practice of the healing arts." In the present case the board has not expressly found that Dr. Adam was "habitually" negligent, and the finding that he was "wantonly" negligent in three or four isolated instances falls short of being the equivalent of a finding of habitual negligence. In so far, therefore, as the order revoking the license is based on the finding of wanton negligence alone, it is quite likely that it will not be sustained on the appeal. It does not necessarily follow from this that the appeal will be wholly successful but it does indicate that at least in this particular regard the board acted without strictly following the statute.

For the foregoing reasons it is concluded that, prima facie, there is enough merit to the appeal so that matters should be kept in statu quo pending the appeal. It is therefore ordered and adjudged that the revocation of the applicant's license as a physician ordered by the state department of health on June 18, 1948, as a result of a finding and vote of the Connecticut medical examining board, dated June 5, 1948, be and the same hereby is stayed pending the determination of the appeal entitled *Forbes S. Adam v. The Connecticut Medical Examining Board* and *The State Department of Health,* which appeal is returnable to the Superior Court for Litchfield County on the first Tuesday of September, 1948.

Counsel may submit a proper judgment file for signature.